Good afternoon, Your Honors. James Holland for Spencer-Peterson, who is here to my left also. First off, my apologies. The Court reconvened far quicker than I expected that it would have, so we did not mean any slight or affront. I'm not hearing you. I'm sorry. Could you talk? We did not mean any slight or affront by not being here when the Court called the case. We thought it would take a bit longer for the Court to reconvene, so I apologize for that. You were very fast caught. Let's see if I can reciprocate, perhaps. All right. Let me ask you something to start out with. Certainly. You argued below that, as I understand it, that this charge was timely because there was a California work-sharing agreement that permitted you to file with the EEOC and count that as filing with the State, and that since you were within the 240-day period, that counts. That seems right to me. Why are we what are we doing here? I'm really baffled now. Doesn't California have a work-sharing agreement of that kind with regard to filing with And the documents reflect it as well, because the FEHA said that they were considering the filing with the EEOC to be a filing with them, and they were closing their case and so on. We have lots of case law analyzing those situations and allowing you to file indeed up to the 300-day period, but you don't even need that. You only need to get up beyond the 180 days to the 240-day period. So what's our problem here? The trial court misconstrued some of this. I know, but you don't even argue it. You argue a hundred other things, but you don't say this very straightforward thing, which is this was all done pursuant to a work-sharing agreement that's been recognized and allowed and has been in which it is okay to file with the EEOC after the 180 days, in which it's then referred to the State, in which the State waives its right to adjudicate or to consider the case separately. You never say that in your brief, but you did say it in the district court. My understanding was that if Were you the lawyer in the district court? Yes. If Mr. Peterson did not first file with DFEH Why? That he would not be entitled to that 300-day period. Why is that? There's lots of case law that says otherwise. Then Doesn't the agreement say otherwise? Isn't that what the DFEH said when they said it was fine with us? That is certainly contrary to what the defense has been arguing all along here. I understand that, but I don't understand why we're even standing here. The position that we took was that the earlier filing, May 2105, with the State personnel board May I ask the State to answer that question? Certainly. Before we go on, because I'm really baffled. Good afternoon, Your Honors. Yes. Could you tell me why this isn't a charge-filing circumstance that is covered by the California EEOC work-sharing agreement that allows, as I understand it, the EEOC for filing exactly what occurred here, i.e., a filing with the EEOC, which would be referred and considered to be filed in a timely manner with the DFEH and the DFEH raises time period and so on, the Supreme Court commercial Commercial products, Your Honor? Yes, and so on. EEOC versus commercial products. Yes. I guess I have two responses to that. The first is that, as had been argued in their brief, this had not been addressed But it was addressed below. They did argue it below. That's correct. And my understanding below, and again, we're here because, as the Court is well aware, the Court can grant a summary judgment on any grounds that would have been proper. But he granted it on the grounds that the charge-filing was improper and it wasn't. Right. And I think the reason You agree that it wasn't, that the charge was timely on that basis. Correct. The charge that was filed on June 28th, 2005. Right. That that was timely as to the April 14th, 2005 failure to notify or failure to receive notice. My understanding is below the Court seemed to focus on the notion, as the point was made by Plaintiff Appellant, was that the filing with the State Personnel Board was akin to a filing with the DFEH. But we don't need that because the filing with the EEOC was okay. Right. And so All right. So we agree, therefore, that we have a timely filing and we should just forget that whole problem. Well, the only difference that I must offer is that my understanding is correct. I understand there to be a work-share agreement that exists. The difficulty is we do not have that work-share agreement in this record. And my understanding is that the work-share agreement that exists between the Equal Employment Opportunity Commission and the Department of Fair Employment and Housing is not necessarily the same from year to year. And in an important way, because where it can differ on occasion is the extent to which the DFEH will assert jurisdiction over particular claims that are embodying a charge that first comes to the EEOC. Well, don't you think that you as the State who deals with these cases all the time I do, Your Honor. should have told the district court that when he said, oh, how can you possibly file with the EEOC and have that work, that in fact it does work most of the time?  Well, you've just been standing here as if there's something terribly wrong with this, and there isn't. Well, and I just want to first need to make clear I was not on this below. Okay. But more importantly, I want to make aware that my understanding of the cases is what Your Honor has presented, that whether it's Mohasco or commercial products or Love back in 1972, that they have recognized the ability to have a dual filing. Right. And the difficulty that I see here is we agree with that premise. What we don't have, though, in order to make the argument was made and the district court just said, oh, you're just totally out to lunch, there is no such thing. And I think this is why. It's because below, relying on Green and Rad, if I'm saying that correctly, Green was a case that was venued here in California, Rad from Alaska. I believe the Court was focusing on the notion that in order to trigger the 300-day filing as a joint filing, that it need to be filed in the first instance with the Department of Fair Employment and Health. What is wrong? And I would agree that, again, we do not have the work-share agreement. And I cannot attest to what the work-share agreement in 2005 says. But you have to. Well, you probably can if you defend these cases at all regularly. I actually don't know, Your Honor. I mean, I wish I did know what that said, but I don't. But I can say that we typically see this. And the reason why is obvious, because there is a tremendous amount of work that is required by those agencies in determining how to best process these charges. Right. Hopefully to resolve these claims, to conciliate these claims. But you don't have any reason to think that the 2005 agreement doesn't apply to this? No. What I don't know is oh, definitely. I would understand there to be an agreement. I don't know what it says. But there is one in existence. It's continued to be in existence. And you have no reason to think it doesn't apply to this charge? Yes, although what I don't know is whether it would impact the notion that the receipt of the charge by the EEOC would in fact constitute a filing on the date that it was received, assuming that it's promptly then sent over to the DFE for processing. Generally, that's been the California. I mean, I know that that's generally been the California system. If the 2005 wasn't, it was some strange year. Exactly. And I just don't know, Your Honor. And I can't sit here and say. Why don't we go on with the argument? But it's really been very discouraging to me that neither of you have mentioned this, but particularly the State, which I assume has many, many, many of these charges and must have known that when the district court said oh, this is. . . The judge probably didn't know. But when he said this is just ridiculous, you can't do it this way, that was just wrong. And somebody from your department should have stood up and illuminated him. I understand, Your Honor. All right. Thank you. An awful lot additional that I need to be asked. You have the rest of the case. You still have a case to deal with, right? Okay. It is also our position that the filing with the State Personnel Board should have been recognized by the trial court as also triggering the 300-day period because the State Personnel Board, as to State employees, is a State agency that in the language of the statute is authorized to enforce a civil rights statute. It certainly should have also entitled us to a 300-day filing period, although the trial court's finding that it was not in fact served on the State Personnel Board I think is overcome by. . . All right. But let's assume. . . Well, first of all, there is this gap in the record which doesn't exactly say whether there is such a work-sharing agreement. Would it make sense for us to have a limited remand to go down to allow the introduction of any such work-sharing agreement so we can find out whether the whole timeliness thing is by the boards? Indeed. All right. So let's assume for the moment that the whole timeliness thing is by the boards. Let's deal with the rest of the case. Once we get past the timeliness issue, then we have the remaining adjudication of the failure to notify of the interview that occurred on April in 2005. The very narrow focus of the motion for summary judgment was aimed at an assertion essentially that the mailbox rule notice was placed in the mail and that the clerk that did so did not know Mr. Peterson's race and, therefore, as a result, could not possibly have harbored any discriminatory intent. Well, let me back up for a minute. You have a – you filed about six incidents, right? Let's assume that the charge was timely in the sense that it applied to anything that was within the limitations period back from the time that you filed. What is that? What would that cover? That would cover only the December 6th, 2004. Okay. And the April one. And the April 2005. But you never litigated the December 6th one because it was held untimely. That's correct. So on that one, you would have to go back to litigate it. Yes. All right. What about the – so we're talking about the April one is the one that everybody agreed was timely and that was adjudicated on the merits on summary judgment. Yes. Okay. Go ahead. And in that regard, the – our position is that the narrow focus of the motion aimed at the clerk not having any knowledge of Mr. Peterson's race, therefore could not possibly have harbored any discriminatory motive, we aimed our opposition at that thrust. The narrow focus of that motion was insufficient in our opinion to trigger a true  And that's not to say that the motive was discriminatory. Right. Your claim is that she – that you weren't notified for discriminatory reasons. So the question isn't what you received. It's what was sent. Right? Yes. All right. Then they say they have evidence that they sent it. They have – and you have – your only evidence they didn't send it is a declaration that he didn't receive it. Is that right? And a prior incident of not having been notified as well. He just happened to be there at the time. I didn't hear that. Go ahead. And a prior incident covered in his declaration where he had also not received notice of another promotional interview indicating that it might be a pattern that occurred more than one occasion. He happened to be present by happenstance at the location where the interview – prior interview was taking place and thus participated, despite not having been properly notified of the prior one either. Okay. So he twice wasn't notified. Correct. And that was the evidence that was offered. And so you would think that – so your basic argument is that that's enough evidence to get over the non – the – on summary judgment to get over the evidence of nailing. Yes. Certainly not enough. It appeared from the trial court's decision as if it was thrusting upon us as well our ultimate burden under St. Mary's to come forward with evidence of discriminant – the basis of the entire decision. All right. So then she says, I had no idea what his race was, so how could I have discriminated? So what's your answer to that? We came forward with evidence that they had in fact met face-to-face and had had telephonic communications, therefore must have known his race at the time. The Court then changed our target on us and said, well, wait a minute, you had to come forward and prove the ultimate case here under St. Mary's. But it is our position that the narrow focus of the defense motion in this respect was never enough to trigger the ultimate burden shifting that should have taken place under McDonnell, Douglas, Burdine, and St. Mary's ultimately. Is there any evidence in the record that Adams and Hanson were ever involved with Webb?  Not other than that they were persecutors. Is there any evidence in the record that individuals outside the protected class were promoted? Yes. What? I mean, I'll look for it. I believe it's at ER 177, and it should also be in Peterson's declaration, that individuals outside of the protected class were ultimately promoted. I'll look again. Unless there's further questions. So is there any evidence in there that Webb called anybody? No evidence with regard to her telephonic communications of anyone other than Peterson. Is there anything else? That's all I have. Thank you, Your Honor. Let me just back up for a minute on the timeliness issue. Do you have any reason to think that the two do you know anything about the 2005 work-sharing agreement? No, I personally do not, Your Honor. I'm sorry. And you didn't allege it because you didn't know anything such that existed, or what? I understood the reference to power-sharing agreement, and the thrust of my argument certainly in bringing the motion for reconsideration was to address what I perceived to be the incorrect thrust of the trial court's decision. The reason I'm asking this is because you don't have any reason to believe that the 2005 work-sharing agreement doesn't cover this situation. No, I do not, Your Honor. Okay. Thank you. Thank you. Members, you have the remainder of your time. Excuse me. Focusing on, first, the December 6, 2004 failure to promote, I do wish to raise with that, and a point that was raised in the briefing, that the charge that was filed, the June 20, 2005 charge, which would be the operative charge, the charge itself makes specific reference to the April 14, 2005, failure to notify, failure to receive. And it makes a broad statement saying that I've been, not been promoted to the position of lieutenant or works to this effect most recently on April 14, 2005. So it's our position that, looking at the terms of that, when we're dealing with a failure to promote, and a failure to promote is a discreet act, one that's known, that that charge itself was insufficient to provide notice to the EEOC and or the employer as to that this was an act that would be covered within. The case law supporting that? Yes. And focusing on Morgan in particular that identifies the nature of the conduct, and I believe it is also. Well, he identified the nature of the contract. I'm promoting him. Right. It's really the ubishonest progeny, but then looking at Morgan talking about the notion of what is constituting a discreet act and what is known to that individual. So that being said, assuming that is considered, then looking at the December 6, 2004 failure to promote, appellant has raised the issue that there is sufficient evidence that they raised to create a disputed issue of fact to permit this matter to proceed. And we have a number of points that the April incident. Oh, I'm sorry. What did I say? You said December. Oh, my apologies. So my apologies. April 14th. Thank you. And in that, Lisa Webb, whose declaration was provided, and she's the office assistant who is charged with the ministerial task of preparing these lists and sending them out, indicates in her declaration that she followed that process with him and sent this to him. She had no sort of work with him, no sort of direction received from Hansen or any other decision maker who would have a role in making a determination as to who would or would not receive that promotion. And I think more interesting is the fact that Mr. Peterson, appellant, has raised in his brief that in December, she was the one who called him a few days before the December 6th interview to let him know that that was scheduled. Certainly, if you have somebody who is harboring some sort of discriminatory intent to somehow torpedo your attempts to receive a promotion, it's reasonable to infer that that person would not not call them, but in fact, here she's calling them to let him know, which is, I think, a reasonable inference that she does not harbor any sort of discriminatory intent. Well, she said she didn't know him at all, and he says that she did. Right. But I think more importantly, though, if you're looking at her role in this process, there isn't anything to say, one, that she didn't do what they allege she didn't do, which was she sent the information. There was no admissible evidence that shows that that didn't occur. Yeah, there is. He said he didn't receive it. He said he didn't receive it, but that doesn't mean she didn't send it. Well, it doesn't mean it, but it's some evidence that she didn't send it. Right. But also all of the evidence to show the process that was followed, and there's nothing in the record. And, you know, if it went to trial, I mean, I have a problem with the notion that there isn't enough evidence of non-mailing. So because in general, the whole point of the mailbox presumption is to let the mailer have enough evidence to get to a jury, but it doesn't overcome evidence of non-receipt even when the evidence of non-receipt is simply I didn't receive it. And here he says I twice didn't receive it, so that's a little more than I just didn't receive it. Well, I think he says I didn't receive it the first. That's what he took issue with in his pleading, and below was the April 14th, 2005. But he says he now says he's now reporting that his declaration, and I don't have it in front of me, said he didn't receive an earlier one either. Right. But he received notice of that by Ms. Webb, the same person he now claims is somehow involved. He said he didn't receive it, though. What do you mean? He said he didn't receive it earlier. He just happened to stumble on it. Right. Well, and that she called him in December of 2004 to let him know about this. My point being that if this is the same person who is somehow harboring some sort of discriminatory intent in April of 2005, that seems inconsistent to say that that same person would take it upon herself to make sure he was aware of a promotional opportunity, particularly when there isn't any evidence in the record that she did anything other than play a ministerial role and she had no say in the actual decision making process. And then moving back to the December 6, 2004 failure to promote, as I understood what Your Honor said, that it sounded the panel was contemplating, just would remand that if it found that it's timely within the 300-day filing period so that a motion or further proceedings can occur with regard to the merits. Because there has been none, right? Well, there is in the record, and this is just what I wanted to point, is in the record there is information. It is beginning at, I believe, it's pages 40 to 43 that address, and specifically actually at 43, that it addresses the testimony that appellant provided in the administrative proceeding, where he specifically talks about this December 6, 2004 interview process. Right. And it also encompasses in that the testimony. Did you move for summary judgment on the merits of that issue? No, we did not. Right. So, but I just wanted to, as the Court is aware, the evidence is in that record. So if it appears to the Court that that would be satisfactory as an additional grounds for summary judgment, that it is indicia that Mr. Peterson is not able to establish his, at a minimum, his prima facie case. So if you didn't move for summary judgment and the Court didn't rule upon that, how do we know that all the evidence that could be prepared for that particular situation is in the record? I think the only difference here, Your Honor, is that what we do have is the testimony that occurred back in 2005 after this incident arose. But you're right, Your Honor. Certainly below, more could be had. Although discovery had been completed, it's my understanding. Again, I wasn't counsel on it below. So the only last point I did want to raise is if I understood also what Your Honor was saying with reference to the work share agreement and there being a limited remand as to the work share agreement. Below, I think, Appellant had made reference to potentially a work share agreement between the SPB. No, he said something about a due filing. Yes. And I just wanted to make sure I was clear. I'm not talking about the SPB. Because I can represent there is no such agreement. No, I understand. I wanted to address that. Thank you very much. Thank you very much. Counsel, looking at Mr. Peterson's declaration on the notice, it seems to me that your opponent has accurately and you have inaccurately portrayed it. He didn't say, I just happened upon the earlier interview. He said that this Webb called him about it. Page 189 of the record, of the excerpts.  Yes, it does certainly say that, or implies that no written notice had been received. That's true. But it's certainly some indication that Ms. Webb wasn't discriminating against him when she called him to notify him of the interview. Certainly, I appreciate that. And that nobody was trying to keep him from the interview. What we were attempting to do with this was respond to the specific thrust of the motion that had been brought, which asserted that she had mailed him the notice with regard to the April hearing. Our effort was to point out that he had not been mailed a prior notice with regard to the December hearing. And while I appreciate counsel's point that it would commonsensically strike one as inconsistent with a discriminatory motive for her to have called him with regard to the earlier interview, we don't have in the record what information about what glitch there may have been with regard to her failure or someone's failure to send him written notice of the earlier interview. Is your basic position that the summary judgment that was filed was to not ask for summary judgment on the April 14th incident generally? Is that what you're saying? It sought adjudication as to the merits of it. Right. But its focus was very narrow. It did not come in and straightforwardly ask us to produce any evidence that we had of the case. But if you're asking for summary judgment on that basis, then you have to come up with some evidence. Because you have the burden of proof, and under the summary judgment law, the burden of proof remains with you and you have to prove it or else you lose. I absolutely understand that. But our point was that the focus of their motion was so narrow, it was quite unlike an ordinary, well, I don't mean to degrade it, but paradigm of a McDonnell-Douglas Burdine burden-shifting model where the basis of the decisions and actions taken is much more thoroughly explored. Rather, they came in with a very narrow focus. Ms. Webb said I had never met him and said that I put it in the mailbox. And so our response was to those very narrow allegations. Well, why didn't you include that, then, as one of your big problems when you filed your motion for reconsideration? As I recollected, Your Honor, I could be off on the timing, but I think that the motion for reconsideration came before the State's third motion for summary, and the third one was the summary judgment motion. Well, the motion for consideration was filed, and then the judge ordered the motion in July of 2007 on the 17th. When we have the summary adjudication decisions made by the court, I mean, I guess I have to look at the decisions here, but May 15, 2007, so I'm having a tough time. Could you? The summary adjudication decision that we're now have in front of us is June or, excuse me, May 15, 2007. Then the order on reconsideration came in July. Answer your question was why I? Well, if it was such a big deal, if you didn't know what you were really going on on summary judgment, why didn't you put it in your motion for reconsideration? I mean, if I read the motions, they were pretty straightforward as to where they were going. Everybody was kind of under the impression that we were going to you didn't want to, but it was pretty obvious that the district court or at least people were arguing that now something that Judge Berzon has found about the EEOC sharing agreement being responsible or being a notice to both wasn't in the record. So we were looking at 120 days, and so the motion for summary judgment was, well, you didn't make it on the 120 days on anything else, but there is one you could have made it. So we're going to continue to do with that. And so we talked about that in the motion for summary judgment. Then you file a motion for reconsideration, the same issues, and you didn't put that in that, well, we didn't quite know what we were doing when we got summary judgment. The reconsideration, I had to show either new facts, new law, or change circumstances. And I felt that with regard to the earlier adjudication, the Ledbetter decision gave me, or at least a footnote in the Ledbetter decision gave me a new impetus in that regard because it had to come down afterwards. Thank you very much, counsel. Thank you. And thank you all for your arguments in Peterson v. California Department of Corrections.
judges: Noonan, Berzon, Smith